

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROSSARIO'S FINE JEWELRY, INC.,  )
etc.,                            )
                                 )
            Plaintiff,           )
                                 )
      v.                         )   No.  06 C 3820
                                 )
PADDOCK PUBLICATIONS, INC.,      )
et al.,                          )
                                 )
            Defendants.          )

MEMORANDUM OPINION AND ORDER

Rossario's Fine Jewelry, Inc. ("Rossario's") has filed a putative class action Complaint against Paddock Publications, Inc. ("Paddock") and a group of "John Doe" defendants, complaining that it received an unsolicited fax advertisement from Paddock on May 30 of this year. As explained hereafter, Rossario's counsel have not been guilty of an error too frequently encountered in federal pleading (because their Complaint, proper under Illinois state practice, has come here via removal rather than as an original federal lawsuit). Yet a moment or two is worth spending on the subject, in the hope that it may help to discourage the use in future lawsuits of the unsound practice referred to in the next paragraph.

It has been nearly 15 years since our Court of Appeals issued a thoughtful opinion criticizing the mistaken practice of carving up a single claim (which is the relevant concept in federal pleading) by setting out different theories of

recovery in different counts (NAACP v. American Family Mut. Ins. Co., 978 F.2d 287, 291-93 (7th Cir. 1992)).[1] Yet that practice persists unabated, demonstrating either (1) that practitioners have just not read NAACP and the other cases delivering the same message or (2) simply that old habits die hard.

In this instance, however, Rossario's counsel cannot be faulted for having divided a single federal claim, like Gaul, into three parts. As indicated at the outset, it must be remembered in that regard that this action was originally filed in the Circuit Court of Cook County, where the operative jurisprudential concept is that of a "cause of action" rather than a "claim."[2] But with the lawsuit now here, of course, federal (and not state) legal principles control.

---

[1] NAACP had been foreshadowed earlier that same year in Bartholet v. Reishauer A.G. (Zürich), 953 F.2d 1073, 1078 (7th Cir. 1992), though NAACP provided a much more thorough exposition. By sheer coincidence another Seventh Circuit panel issued an opinion on the same day that NAACP was handed down that reconfirmed and again applied the Bartholet principle (Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1134 (7th Cir. 1992)).

[2] Indeed, this Court has not sought to track down the source of the pervasive practice that is exemplified by complaints that follow the same approach as Rossario's Complaint even though they originate here in the federal court--complaints that therefore bear no resemblance to the originally intended function of separate counts set out in Fed. R. Civ. P. ("Rule") 10(b). Nonetheless, it seems that the practice may well stem from the same "cause of action" concept that is operative in the Illinois state court systems and is illustrated by Rossario's complaint filed there. If so, it is particularly difficult to understand, given the fundamental difference between Illinois' fact pleading approach and the notice pleading regime that controls in federal practice.

In all events, Paddock has now responded in kind by moving for the dismissal of Count II, which charges it with violation of the Illinois Consumer Fraud Act ("Illinois Act," 815 ILCS 505/2), and Count III, which alleges the common law tort of conversion. Even though Rossario's has resisted that effort at partial dismissal, Paddock is right on both counts (and both Counts), and Rossario's will be limited to proceeding under the theory asserted in Count I: violation of the federal Telephone Consumer Protection Act ("Federal Act," 47 U.S.C. §227).

As for the Illinois Act, unlike the Federal Act, it requires that the complained-of action be "unfair" (a concept fleshed out in Robinson v. Toyota Motor Credit Corp., 201 Ill.2d 403, 417-18, 775 N.E.2d 951, 960-61 (2002)). Here is what Robinson says (with most citations omitted) in the just-cited portion of the opinion on the subject of the required "unfairness":

> In determining whether a given course of conduct or act is unfair, we observe the Consumer Fraud Act mandates that "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." The United States Supreme Court in Federal Trade Comm'n v. Sperry & Hutchinson Co., 405 U.S. 233 (1972), cited with approval the published statement of factors considered by the Federal Trade Commission in measuring unfairness. These factors are (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. In Saunders [an Illinois Appellate Court case], the court applied Sperry and held to be insufficient plaintiff's allegation in a Consumer Fraud Act complaint that bank fees charged for overdrafts were excessive. The court noted that charging an

3

unconscionably high price generally is insufficient to establish a claim for unfairness. Citing Sperry, the court held that defendant's conduct must violate public policy, be so oppressive as to leave the consumer with little alternative except to submit to it, and injure the consumer.

Although the holding in Saunders seems to suggest that all three prongs of the Sperry test must be met, that is not an accurate statement of plaintiffs' burden. As the Connecticut Supreme Court held in interpreting that state's unfair trade practices statute, all three of the criteria in Sperry do not need to be satisfied to support a finding of unfairness. Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 106, 612 A.2d 1130, 1143 (1992). The Cheshire court cited with approval and quoted the Statement of Basis and Purpose, Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures, 43 Fed.Reg. 59,614, 59,635 (1978), as follows:

> All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.

We believe Cheshire expresses the correct standard and hereby adopt it as our own.

True enough, Fed. R. Civ. P. 12(b)(6) principles require this Court to credit Rossario's allegations, and this Court has indeed done so--but that requirement does not extend to the crediting of Complaint ¶30's pejorative "unfair practice" label where, as here, the totality of the Complaint's allegations as to the facts and circumstances--which have indeed been credited--so directly negate that characterization as a matter of law. On that score, see such cases as N. Trust Co. v. Peters, 69 F.3d 123, 129 (7th Cir. 1995)(" For the purpose of testing the trial

4

court's action, well pleaded allegations of the complaint are to be taken as admitted, but mere unsupported conclusions of fact or mixed fact and law are not admitted") and Steidl v. Gremley, 151 F.3d 739, 741 (7th Cir. 1998)("When factual allegations conflict with a legal conclusion, the factual allegations are decisive").

Simply to apply that standard to the Robinson criteria demonstrates the untenability of Rossario's attempted invocation of the Illinois Act. Of the three Robinson-identified factors, only the "public policy" consideration is met, and the patent inapplicability of the other two factors to Paddock's one-page fax advertisement heavily outweighs that one element in the evaluation called for by Robinson. This Court therefore joins in the views stated by its colleague, Honorable John Grady, in the startlingly parallel case of W. Ry. Devices Corp. v. Lusida Rubber Prods., No. 06 C 0052, 2006 WL 1697119, at *4-*6 (N.D. Ill. June 13).

Before the subject of the Illinois Act is left, however, something should be said about Rossario's bulky--but unpersuasive--response on that subject. Its n.1 begins with this statement that explains the attachment of a group of exhibits and their extended treatment in Rossario's oversized memorandum:

> Illinois Circuit Courts have held that actions may be maintained under the ICFA [Illinois Act] and for conversion, stemming from a violation of the TCPA [Federal Act].

But Erie v. Tompkins principles do not call for this Court to

5

honor the decisions of Illinois nisi prius courts--and certainly not when the Illinois Supreme Court itself has defined the scope of the Illinois Act. And as if that were not enough to dispatch Rossario's arguments on the subject (and it is), the dubiousness of its counsel's efforts is underscored by the fact that of the six Illinois Circuit Court decisions attached as exhibits, one of them (Ex. 3) <u>rejects</u> a claim under the Illinois Act, another (Ex. 9) requires a better showing of claimed damages by repleading, a third (Exs. 5 and 6) casts doubt on the required substantiality-of-damages factor and two others (Exs. 4 and 11) simply state the courts' ultimate conclusions without setting out any reasoning whatever.

In sum, then, Paddock clearly has the better of it as to the Illinois Act. Count II is accordingly dismissed.

As for the notion of conversion on which Count III also attempts to hang Rossario's pleading hat, it seems that its counsel may well believe that imitation is the sincerest form of flattery, for the Complaint here parallels the three-count structure that advanced identical theories in the <u>W. Ry.</u> case (though Judge Grady had no occasion to address the conversion count in his opinion there). But that aside, any conversion claim asserted under the circumstances described in the Complaint must also be rejected.

What Rossario's counsel identifies as the "property"

6

purportedly converted by Paddock is the "ink or toner and paper" in Paddock's fax machine that were consumed in generating the one-page fax production. As modern a development as the fax may be, that contention reconfirms the teaching of Ecclesiastes 1:9 that "[t]here is no new thing under the sun," for the ancient maxim "de minimis non curat lex" might well have been coined for this occasion.

More importantly, even apart from the niggling nature of the claim in those terms, it is lacking in the formal requirements of a conversion claim, again as a matter of law. In that regard the proposed claim must fail even if this Court were to accept the proposition that the "ink and toner and paper" qualified as the necessary "specific chattels" in the sense identified in such cases as Horbach v. Kaczmarek, 288 F.3d 969, 978 (7th Cir. 2002):

> The essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held. An asserted right to money normally will not support a claim for conversion. Only if the money at issue can be described as "specific chattel"--in other words, "a specific fund or specific money in coin or bills"--will conversion lie.

Even on the premise stated in the preceding paragraph, it would impermissibly warp the concept of "conversion" if that label were to be attached to Rossario's property (ink, toner and paper) that never came into Paddock's possession at all--that was never "unlawfully held" by Paddock and as to which Paddock could be said to have "assumed control, dominion or ownership over the

7

property" (Cirrincione v. Johnson, 184 Ill.2d 109, 114-15, 703 N.E.2d 67, 70 (1998)) only by stretching that language beyond its normal meaning. Once again faithfulness to Erie principles counsels this Court's adherence to the teaching of the Illinois Supreme Court rather than to the imaginative extensions essayed by unreviewed opinions of a few Illinois courts of first resort (with no disrespect intended--indeed, our Court of Appeals regularly reminds us that District Court decisions are not entitled to precedential weight). And to return to the place of beginning, with Rossario's single claim being supported by the Federal Act (unchallenged by Paddock), any conversion theory would be surplusage in any event.

Under Rossario's approach this Court could well charge it and its counsel with "conversion" for the Court's having had to waste paper and ink in the just-completed analysis. But in sum, neither conversion nor the Illinois Act serves as a legitimate predicate for the claim at issue here. As stated at the outset, this action will proceed on the basis of the Federal Act alone--a subject to be discussed during the previously-set August 22 status hearing.

                                                                           _____
                                                                           Milton I. Shadur
                                                                           Senior United States District Judge

Date: August 17, 2006