IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
ROSSARIO'S FINE JEWELRY, INC.,   )
etc.,                             )
                                  )
                Plaintiff,        )
                                  )
     v.                           )    No.  06 C 3820
                                  )
PADDOCK PUBLICATIONS, INC.,       )
et al.,                           )
                                  )
                Defendants.       )
```

MEMORANDUM OPINION AND ORDER

Rossario's Fine Jewelry, Inc. ("Rossario's") originally filed a putative class action complaint in the Circuit Court of Cook County, Illinois, charging that Paddock Publications, Inc. ("Paddock") violated the Telephone Consumer Protection Act (the "Act," 47 U.S.C. §227[1]) and the Illinois Consumer Fraud Act (815 ILCS 505/2) and also committed common law conversion when it sent an allegedly unsolicited advertisement to Rossario's fax machine on May 30, 2006. Paddock removed the case to this District Court pursuant to 28 U.S.C. §1331, and this Court then dismissed both state claims on Paddock's Fed. R. Civ. P. ("Rule") 12(b)(6) motion.

Having completed discovery on the remaining count, Paddock has then moved to resolve Rossario's claim through summary judgment pursuant to Rule 56, and both sides have now spoken to

---

[1] Citations to that statute will simply take the form "Act §--," omitting the Title 47 reference.

that motion. For the reasons stated in this memorandum opinion and order, Paddock's motion is granted.

## Summary Judgment Standard

Well-established Rule 56 principles impose on parties wishing to prevail on summary judgment the burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must consider the evidentiary record in the light most favorable to Rossario's and draw all reasonable inferences in its favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment, Rossario's must produce "more than a mere scintilla of evidence to support [its] position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). If the record were to reveal that no reasonable jury could find in favor of Rossario's, summary judgment must be granted (see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

What follows is a summary of the facts, viewed in the light most favorable to Rossario's under the criteria prescribed by Rule 56 and this District Court's LR 56.1.[2] And that obviates

---

[2] LR 56.1 implements Rule 56 by requiring each party to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which are agreed upon.

the need, in the evidentiary recital, to repeat "according to Rossario's" or the like or to identify any conflicting account, though inclusion of the latter is sometimes called for as a purely informational matter.

## Background

Rossario's is an Illinois corporation located in Wood Dale, Illinois run by its sole shareholder, officer and director Mario Aliano ("Aliano")(P. St. ¶¶1-2). During the relevant time period Aliano was Rossario's only employee (id. ¶3). Paddock is a Delaware corporation doing business in Cook County, Illinois that publishes, markets and sells The Daily Herald newspaper.

It is undisputed that Toni Ventrella ("Ventrella"), an advertising sales executive for Paddock whose job responsibilities include "managing existing relations with Paddock advertising customers, and contacting potential new customers for advertising business," (P. St. ¶¶13-14), faxed an advertisement to Rossario's on January 6, 2006 (id. ¶45) and again on May 30, 2006 (id. ¶12). At the heart of this controversy is a dispute about whether Ventrella had previously communicated with Rossario's and obtained permission to send it

---

This opinion cites to Paddock's statement and exhibits as "P. St. ¶--" and "P. Ex.--," respectively, and to Rossario's response as "R. St. ¶--" and its memorandum as "R. Mem.--." Mario Aliano's deposition is cited as "A. Dep.--." Where an assertion in either party's LR 56.1 statement is undisputed by the opponent, the opinion includes only a citation to the original statement.

3

any such fax advertisements detailing Paddock's promotional offers.

Ventrella testified at her deposition that on November 2, 2005 she placed a phone call to Rossario's and asked to speak to the person responsible for advertising (P. St. ¶36). When she was told that person was not available, she asked the person who answered the phone if she could send additional information regarding Paddock's advertising promotions to Rossario's via fax (id. ¶39). Ventrella said that the person who answered the phone not only told her she could do so but also provided her with Rossario's fax number (id. ¶40). During discovery Paddock produced one of Aliano's business cards, which had Rossario's fax number in Ventrella's handwriting on the back (id. ¶18).

Aliano confirmed that Rossario's fax number, which has remained the same for its entire history (P. St. ¶21), is not printed on his business card and has never been published on the Internet, in the Yellow Pages or in any other location where the general public could obtain it (id. ¶¶23-26). Aliano's "explanation" as to Ventrella's possession of his business card and unpublished fax number is no explanation at all--it is simply an emphatic denial that he ever gave her or anyone from Paddock either of them (R. Mem. 5).

Paddock has also produced authenticated phone records from

PAETEC Communications, Inc.[3] ("PAETEC") showing that a 50-second phone call from Paddock's phone number to Rossario's phone number did take place on November 2, 2005 (P. St. ¶¶31-34). Ventrella further testified that she followed up with Rossario's after that phone call by sending at least two other faxes from late 2005 through May 2006 (id. ¶43), including a January 6, 2006 fax detailing Paddock's Valentine's Day promotional offer (id. ¶44). Aliano admits that he received that fax, though it does not form the basis of the current Complaint.

Again on May 30, 2006 Ventrella sent a one-page fax to Rossario's fax number, this time with information about Paddock's advertising special for June 2006 (P. St. ¶51). It was that one-page fax sent to Rossario's fax number and individually addressed to "Mario-Rossario's Fine Jewelry" (id. ¶¶51-52) that stimulated the present effort by Rossario's to catch the brass ring of damages--and class damages, at that--under the Act.

For his part, Aliano denies that the phone call granting Ventrella permission to send Rossario's a fax ever took place. Aliano claims that he was Rossario's sole employee and the only person present in the store on November 2, 2005, and hence the only person who could have answered the phone that day (R.St. ¶¶70-73). When asked if he recalled receiving any phone calls on

---

[3] PAETEC maintains phone records in the regular course of its business (P. Ex. 15).

5

that date, Aliano testified that he "probably" did receive phone calls, but he did not recall a conversation with Ventrella or anyone else from Paddock (though he did not recall with whom he <u>did</u> speak either (A. Dep. 122), and he denies that he or anyone else answering the phone at Rossario's ever received that phone call (<u>id</u>. at 123-24): "I am the only one there and I'm the only one that picks up the calls and I didn't speak with them." He also testified that there were no messages from Paddock on his answering machine that day (<u>id</u>. at 123), though he had no retained notes as to incoming messages (his practice was to discard any retained notes within a few days).

In an attempt to refute the objective documentary phone record evidence proffered by Paddock, Rossario's argues that the records do not really establish that the phone conversation took place because (1) they do not show the identity of the caller (though they admittedly show that the call was made from a phone number registered to Paddock), (2) they do not show whether the call was actually completed or whether the caller got a busy signal at the other end and (3) they do not show whether the phone call was answered by a person or an answering machine, nor (4) do they show the contents of the call itself (R. Mem. 7). As the later analysis reflects, those makeweight (at best) contentions cannot stave off summary judgment.

## Rossario's Claim Under the Act

Through the Act Congress has sought to condemn parties who send "junk faxes" that "invade[] the recipient's property interest in consumables" such as ink and paper (<u>Am. States Ins. Co. v. Capital Assocs. of Jackson County, Inc.</u>, 392 F.3d 939, 943 (7th Cir. 2004)). To that end it has been made unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless" the fax was sent under the conditions described in this relevant portion of a statutory exception (Act §227(b)(1)(C)(emphasis added)):

>  (i) the unsolicited advertisement is from a sender with an <u>established business relationship</u> with the recipient;
>
>  (ii) the sender obtained the number of the telephone facsimile machine through --
>
>>  (I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement,...and
>
>  *      *      *
>
>  (iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph 2(D)....

Act §227(a)(2) looks to this definition of an "established business relationship" in 47 C.F.R. §64.1200(f)(5):

>  a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry,

7

application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party.

Paddock's invocation of the Act's exception is based on a dual contention. First it urges that the fax was not unsolicited because Ventrella obtained permission to send promotional information during the November 2005 phone call. As already stated, Rossario's response is its strident denial that the phone call ever took place. Paddock's second argument also hinges on whether the November 2005 call took place as Ventrella described, because it rests on the premise that the phone call brought the parties within the ambit of an "established business relationship" due to Ventrella's having obtained Rossario's permission to send fax advertisements to its unpublished fax number.

It is of course old hat to recognize, as <u>Paz v. Wauconda Healthcare and Rehab. Ctr.</u>, 464 F.3d 659, 664 (7th Cir. 2006) (internal quotation marks omitted) puts it, that "[a]t summary judgment, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." To the same effect, <u>Washington v. Haupert</u>, 481 F.3d 543, 550 (7th Cir. 2007) (internal quotation marks omitted) is among the cases that teach:

> However implausible [the nonmovant's] account may seem, it is not our place to decide who is telling the truth. Where the parties present two vastly different

stories--as they do here--it is almost certain that
there are genuine issues of material fact in dispute.

Even under those demanding standards, Rossario's bid to defeat summary judgment fails. To be sure, Aliano's testimony that <u>he</u> did not receive the phone call from Ventrella and give her permission to fax Paddock's promotional materials may be set aside as not fully probative on the subject, without this Court's having to express any doubts as to his credibility in being able to recall precisely what did or did not happen on a specific date months earlier. After all, that testimony about Aliano's noninvolvement is entirely consistent with Ventrella's account that someone who answered the phone said that Aliano was not available, but that the answering person then gave her the fax number and a green light to send a fax.

It is Aliano's attempted reliance on his testimony that neither he <u>nor anyone else</u> answered Ventrella's phone call that day that sinks Rossario's ship. That testimony as to someone else's experience is of course hearsay and, as such, inadmissible to defeat a summary judgment motion (see Rule 56(e)). In the face of Paddock's overwhelming evidence--not only Ventrella's account of events but also the uncontrovertible hard evidence: the authenticated phone records and the presence of Aliano's business card and Rossario's unpublished fax number in Ventrella's file--Aliano offers in rebuttal nothing more than his flimsy and inadmissible hearsay statement that no one answered

9

that call.[4]  That bare denial, proffered without a scintilla of record support, calls into play the teaching of Keri v. Bd. of Tr. of Purdue Univ., 458 F.3d 620, 628 (7th Cir. 2006)(internal citations omitted), which held:

> Thus, to demonstrate a genuine issue of material fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment.

Aliano's unsupported rejection of Paddock's well-supported version of events raises nothing more than a "metaphysical doubt" as to Paddock's version, when it is viewed in light of (1) the phone records expressly showing that a 50-second phone call took place and (2) Ventrella's having obtained Rossario's fax number (and having noted it on a business card of Rossario's).  No reasonable jury could properly find in favor of Rossario's based on its chimerical response to Paddock's record evidence.  As Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)(internal quotation marks omitted) has reconfirmed:

---

[4] In that respect the PAETEC records establish the actual length of a telephone call, unlike other systems that automatically register a minimum one-minute entry for any call that is actually connected for even an instant (as, for example, to reach a voicemail message rather than a human being).  That torpedoes Rossario's contention that the records fail to establish an actually completed telephone call (again as a matter of objective fact, all anyone has to do is to engage in timing a 50-second interval).

> Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.

Rossario's would have this Court--and ultimately any factfinding jurors--believe that Aliano's business card somehow magically appeared in Ventrella's file and that she somehow divined Rossario's admittedly uncirculated and unavailable fax number. Neither this Court nor a jury is thus required (or is indeed entitled) to believe in the tooth fairy or some other supernatural power capable of performing such miracles. Those are simply not the type of legitimate inferences that this Court is commanded to make in favor of a party seeking to oppose a summary judgment motion. Again as <u>Anderson</u>, 477 U.S. at 248 has explained, summary judgment is proper only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Rossario's plainly flunks that test.

## Conclusion

Because Rossario's has failed to produce sufficient evidence that would convince a reasonable jury to find in its favor, it cannot defeat Paddock's motion for summary judgment. Thus Paddock's motion for summary judgment is granted and this action is dismissed with prejudice, thus mooting Rossario's putative class-based claims.

_____
Milton I. Shadur
Date: August 22, 2007     Senior United States District Judge

11